### UNITED STATES v. JOHNSTON.

### Ex parte JOHNSTON.

(District Court, W. D. Washington, N. D. September 12, 1923.)

No. 7483.

1. **Criminal law ☜242(8)—Proceedings for removal of accused to another federal district are judicial.**

   Proceedings for the removal of an accused to another federal district, under Rev. St. § 1014 (Comp. St. § 1674), for trial on an indictment there found, are judicial, and not ministerial, and the accused is entitled to the judgment of the court as to the sufficiency of the indictment and as to the existence of probable cause on the evidence presented.

2. **Criminal law ☜242(6)—In removal proceedings, defects of form in indictment may be supplied by evidence.**

   In proceedings for removal of an accused to answer to an indictment in another federal district, merely formal defects in the indictment may be supplied by evidence.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Indictment and information ⊜⇒60—Indictment which fails to charge essential element of crime is insufficient in substance.**

   An indictment is insufficient in substance when it lacks something essential to make a legal charge of crime.

4. **Receiving stolen goods ⊜⇒7(5)—Indictment must describe property with same particularity as for larceny.**

   An indictment for receiving stolen property must describe the property with the same particularity as required in an indictment for larceny.

5. **Receiving stolen goods ⊜⇒7(5)—Description of property in indictment as "United States currency" held insufficient.**

   An indictment charging defendant with receiving $2,000, "in United States currency," knowing the same to have been stolen from the mails, *held* insufficient.

6. **Criminal law ⊜⇒242(8)—Showing for removal of accused to another district held insufficient.**

   An order for removal of an accused to another federal district for trial refused, where the indictment was insufficient in substance to charge a crime, and the evidence offered by the government negatived, rather than supported, the existence of probable cause.

7. **Criminal law ⊜⇒242(1)—Elements of "probable cause" for removal to another district for trial stated.**

   In order to constitute "probable cause" for the removal of defendant to another district for trial, there must be more than opportunity to commit a crime, or presence in a particular place, and more than surmise or suspicion, and the facts and circumstances before the court must be such as to warrant a man of prudence and caution in believing that the defendant is guilty.

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Probable Cause.]

Proceeding by the United States against Lee Johnston, for removal of defendant to the District of Idaho, and petition by defendant for writ of habeas corpus. Order of removal denied, and writ granted.

August 30, 1923, the defendant prayed: (a) A writ of habeas corpus, to the end that he be discharged from illegal restraint and unlawful arrest by E. B. Benn, United States marshal; (b) A writ of certiorari directing the United States commissioner to certify a full and complete copy of the record in a removal proceeding directed against the defendant. An order was accordingly issued and the marshal directed to show cause why the petitioner was detained. On the same day the United States attorney filed a petition praying an order of removal of the defendant Johnston for trial to the district of Idaho, Northern division, upon the record in removal, which is duly certified by the commissioner.

The marshal's return shows that, pursuant to the indictment returned by the grand jury in the district of Idaho, Northern division, the defendant was arrested and held for removal. Hearing was had before the commissioner, the commissioner found probable cause and held the defendant for removal. The defendant objects to the petition for removal of the district attorney, and to removal, and the United States attorney demurs to the sufficiency of the petition in the habeas corpus proceeding. The entire matter is now considered.

Upon the hearing before the commissioner, the government introduced the indictment, to which the defendant objected on the ground that it is insufficient in law, and does not state an offense against the United States. It also introduced testimony of identity of defendant.

The indictment charges, in substance, that September 10, 1922, at a point near Kellogg, Idaho, the defendant received and had in his possession $2,000, in United States currency, which had been on the 28th day of March, 1922, at Kellogg, Idaho, stolen by one Edward J. Ricks, from a mail pouch, which had

been dispatched from Spokane and Wallace railway post office, train No. 22, etc., and that the defendant at the time knew that the money had been stolen.

Witness Jessen, produced by the government, testified that he drove the defendant from Spokane to Wallace on the 8th of September; that they went there for the purpose of looking for some stolen bonds, a reward having been offered by some party for their recovery; that they examined and searched at a place described by him, and returned through Kellogg on the 10th day of the month. He further testified on cross-examination that he was with the defendant all of the time on the trip; that at no time did the defendant communicate with any one upon the trip; that no one gave to the defendant any money, or any package of any kind which could contain money; that no person put any package or any money of any kind or character into the automobile they were driving; that they found no money; that no one saw the defendant at Wallace, Idaho, where they stopped during the nights they were absent; that they occupied adjoining rooms at the hotel; that they were together until they respectively retired; and that the only purpose of their going to Idaho was the purpose of finding the stolen bonds, amounting to $8,000, and obtaining the reward of 10 per cent. which was offered. It appears in the record that the defendant had at a prior time been attorney for Hicks, the person charged with robbing the mails, but had been discharged prior to this time. There is no testimony before the court that the defendant received any money, or that he had any money of any kind or character, and the government witness Jessen negatives the probability of receiving any money.

The government submits the issue solely upon the presumption created by the indictment, and identity of the defendant. The defendant claims the presumption is overcome by the testimony of the government's own witness. The defendant also contends that the indictment is fatally defective, in that it fails to describe the currency which it is claimed was received by the defendant as stolen from the mails. The government contends the indictment is sufficient, and, if not, that that is a matter for judicial determination by the court in which the indictment was returned.

Judson Falknor, of Seattle, Wash., for petitioner.

Thomas P. Revelle, U. S. Atty., and Chas. Moriarty, Asst. U. S. Atty., both of Seattle, Wash.

NETERER, District Judge (after stating the facts as above). [1] It is settled by the Supreme Court that the order of removal is a judicial act, and that the prima facie case made by the indictment and proof of identity may be overcome by testimony, that the burden to overcome such prima facie case is on the defendant, and that a defendant is entitled to the judgment of the court from which removal is sought as to the existence of probable cause upon the testimony presented. Tinsley v. Treat, 205 U. S. 20, 27 Sup. Ct. 430, 51 L. Ed. 689; U. S. v. Morse (D. C.) 287 Fed. 906. In Tinsley v. Treat, supra, the court quoted Justice Brewer in Beavers v. Henkel, 194 U. S. 73, 24 Sup. Ct. 605, 48 L. Ed. 822:

"It may be conceded that no such removal should be summarily and arbitrarily made. There are risks and burdens attending it which ought not to be needlessly cast upon any individual. * * * We must never forget that in all controversies, civil or criminal, between the government and an individual, the latter is entitled to reasonable protection. * * * In other words, the removal is made a judicial rather than a mere ministerial act."

Probable cause means more than opportunity to commit crime, or presence in a particular place. It must be more than surmise or suspicion. There must be some tangible fact or incident which will support a judicial act, something which invokes discrimination of judicial

discretion. The facts and circumstances before the court must be such as to warrant a man of prudence and caution in believing that the defendant is guilty. Stacy v. Emery, 97 U. S. 642, 24 L. Ed. 1035. And when there is, as here, an utter absence of fact, or circumstances of degree which invokes a discriminating discretion—and it affirmatively appears from the record in this case that no act of the defendant, or any relation to the offense charged attached to the defendant, even though this proof is negative, coming from an intimate source, as in this case, from a witness produced by the government, and upon its face having the ring of truthfulness—a court may well hestitate before concluding that the prima facie case has not been overcome.

Upon the objection to the sufficiency of the indictment, the court likewise exercises more than a judicial discretion. As stated in Tinsley v. Treat, supra:

"He [the judge] must look into the indictment to ascertain whether an offense against the United States is charged."

Numerous cases have been cited by the government, which it is contended hold that the sufficiency of the indictment must be left to the court to which it was returned. These cases, however (Munsey v. Clough, 196 U. S. 369, 25 Sup. Ct. 282, 49 L. Ed. 515; Hogan v. O'Neill, 255 U. S. 52, 41 Sup. Ct. 222, 65 L. Ed. 497; Pearce v. Texas, 155 U. S. 311, 15 Sup. Ct. 116, 39 L. Ed. 164) are cases where one state sought to extradite a defendant from another state, and it was contended in the United States court that the indictment was insufficient under the law of the indicting state, and the court held that, a state statute or procedure being involved, it could well be left with the state court to construe its statute and procedure. In the instant case a federal statute and federal procedure are involved.

In Haas v. Henkel, 216 U. S. 480, 30 Sup. Ct. 249, 54 L. Ed. 569, 17 Ann. Cas. 1112, no contrary proof was presented. The defendant relied solely upon the fact that another indictment had been returned in the district of New York, from which it was sought to remove the defendant, and the court held that the two indictments could pend at the same time, and that the second indictment would not be considered as proof negativing the prima facie case. In this case Justice Brewer, Justice McKenna concurring, said that, when there is a doubt whether the indictment will stand the final test of sufficiency, such doubt should be settled by direct action in the court in which the indictment was returned. Judge Bellinger, this circuit, in U. S. v. Conners, 111 Fed. 734, held that there can be no removal, even where no objection is made, or where consent is given, when the indictment does not state a crime. The Circuit Court of Appeals, Eighth Circuit, in Stewart v. U. S., 119 Fed. 89, at page 93, 55 C. C. A. 641, at page 645, said:

"A federal judge, to whom an application for a warrant of removal is made under section 1014, * * * it has been said, 'misconceives his duty and fails to protect the liberty of the citizen,' if he issues the warrant solely upon the strength of an indictment found in the foreign district, which does not substantially state an offense under federal laws,"

—and discharged the defendant because the indictment did not contain the requisites of a fraudulent scheme to defraud in a mail fraud

case, in that the fraudulent scheme was not described with sufficient certainty to inform the defendant with reasonable certainty of the nature of the evidence to establish the scheme which would be adduced at the trial. To the same effect is Pereles v. Weil (D. C.) 157 Fed. 419.

[2] The Supreme Court, in Greene v. Henkel, 183 U. S. 249, 260, 22 Sup. Ct. 218, 223 (46 L. Ed. 177), through Justice Peckham, said:

" * * * The mere fact that in the indictment there may be lacking some technical averment of time, place, or circumstance, in order to render the indictment even free from technical defects, will not prevent the removal under that section [1014], if evidence be given upon the hearing which supplies such defects and shows probable cause to believe the defendants guilty of the commission of the offense defectively stated. * * * "

In the instant case no testimony was given to cover any of the lacking averments, although it was shown that the government has all information as to the currency charged to have been received.

[3] Section 17, chapter 9, Gould's Pleadings:

"The difference between matter of form, and matter of substance, in general, under the statute of Elizabeth as laid down by Lord Hobart, is that that 'without which the right doth sufficiently appear to the court' is form, but that any defect, 'by reason whereof the right appears not,' is a defect in substance."

In the next section giving his own definition, the author says:

"If the matter pleaded be in itself insufficient, without reference to the manner of pleading it, the defect is substantial; but, if the only fault is in the form of alleging it, the defect is but formal."

Bouvier defines "substance" as that which is essential; says that it is used in opposition to form. An indictment is insufficient in substance when it lacks something essential to make a legal charge of crime. State v. Burgdoerfer, 107 Mo. 1, 17 S. W. 646, 14 L. R. A. 846. The offense must be described with such particularity as will advise the defendant with reasonable certainty of the accusation, so as to enable him to prepare his defense, and bar subsequent prosecution for the same offense. The purpose of the statute (section 10215, Comp. St.) is to protect the mails against pilfering or meddling with its contents. The defendant, however, is not charged with robbing the mails, but with receiving money previously stolen by another. The charge is a felony in the nature of a larceny charge, as it is a malicious or wrongful taking of the property of another. The offense is statutory. The object of the law is to convict the guilty and shield the innocent.

[4, 5] The charge of receiving stolen property must describe the property with the same particularity as required in an indictment for larceny. Duncan v. Commonwealth, 165 Ky. 247, 176 S. W. 984; Wells v. State, 90 Miss. 516, 43 South. 610. Charging the defendant with receiving $2,000 in *United States currency,* knowing the same to have been stolen from the United States mails, is insufficient, because it does not apprise the defendant of the nature of the offense, so as to give him opportunity to meet it, and it does not make a judgment certain and available, and a bar to a subsequent prosecution for the

same offense. Wharton's Crim. Proc. § 267; State v. Longbottoms, 11 Humph. (30 Tenn.) 39; Vaughn v. People, 29 Mich. 23; People v. Hunt, 251 Ill. 446, 96 N. E. 220, 36 L. R. A. (N. S.) 933. "United States currency" is a general term, and may include gold, silver, treasury notes, or bank notes. Ex parte Prince, 9 South. 659 (Fla.). It includes notes issued by the banks organized under the laws of the United States, the notes commonly known as greenbacks, and the certificates of deposit commonly called gold and silver certificates issued by the United States. State v. Oakley, 51 Ark. 112, 10 S. W. 17. It means the currency authorized by the United States government. State v. Gasting, 23 La. Ann. 609. It includes no doubt Federal Reserve notes.

Is the charge gold, silver, gold or silver certificates, treasury notes, Federal Reserve notes, national bank notes, or part of one kind and part of another. The law presumes the defendant innocent. To hold that this description advises him of the nature of the charge would presume his guilt and knowledge of the kind and character of currency charged. The indictment would not sustain a judgment of conviction. State v. Segermond, 40 Kan. 107, 19 Pac. 370, 10 Am. St. Rep. 169. Attention is called by the government to language employed in U. S. v. Falkenhainer (C. C.) 21 Fed. 624, but in that case the court said:

"It may be remarked, in passing, that the indictment contained full description of the letters, so that the identification was complete."

Judge Gilbert in Thompson v. U. S., 202 Fed. 403, 120 C. C. A. 577, 47 L. R. A. (N. S.) 206, said:

"The indictment charges that the defendant did willfully * * * receive * * * bank notes, *which were therein described.*" (Italics mine.)

In that case it was held that it is not necessary to allege ownership of the notes, as the purpose of the statute (Rev. St. §§ 5467–5470 [Comp. St. §§ 10364, 10365]) is to protect the mails against plundering, pilfering, or other interference or meddling with its contents. It is noted, however, that the bank notes were described. Bowers v. U. S., 148 Fed. 379, 78 C. C. A. 193, was a mail theft charge, and the theft was described with particularity. Here the gist of the offense is the thing stolen, received by a stranger to the robbery, and the article stolen must be described with particularity. The other cases are to the same effect, as above indicated.

[6] A failure to describe the currency with particularity was clearly an omission of matter of substance, nor is probable cause shown.

Let the writ issue.