THE CITY OF MEXICO.

UNITED STATES *v.* THE CITY OF MEXICO.

*(District Court, S. D. New York.* November 30, 1885.)

1. ARREST—REASONABLE CAUSE—SECTION 970, REV. ST.—OFFICERS PROTECTED.
   Persons who carry on trade up to the brink of illegality must avoid at their peril additio al circumstances of suspicion, whether in the *suppressio veri* or *suggestio falsi.*

2. SAME—PROBABLE CAUSE—CERTIFICATE.
   Reasonable cause, under section 970, Rev. St., is the same as probable cause; and where reasonable grounds appear for the belief that the law has been violated, it is the duty of the officers to arrest apparent offenders; and that section makes it obligatory on the court to grant a certificate for their protection.

3. SAME—STATEMENT OF THE CASE.
   The steamer City of M. was chartered for the benefit of the insurgents at Barranquilla to carry arms for their use. The manifest filed by her agents before sailing did not state that she had arms aboard. The supplemental manifest was delayed long after the time allowed by law, and a false destination was given. An agent of the insurgents accompanied the ship, and as soon as her arms were discharged at Barranquilla she departed for Rio Hacha with a troop of soldiers, who captured the custom-house officers, and afterwards attempted to make use of the steamer to capture a Colombian vessel; and the mate made affidavit of the unlawful intent of the expedition. *Held,* that these, with other circumstances, afforded probable cause for arrest of the vessel, and that a certificate thereof should be issued, though upon the trial the vessel was discharged.

In Admiralty.

*William Dorsheimer,* Atty., *S. B. Clarke,* Assist. Atty., for the United States.

*W. W. MacFarland* for claimant.

BROWN, J. The City of Mexico having been seized by the collector for an alleged violation of the neutrality laws, and afterwards, upon trial, released by this court, (24 Fed. Rep. 33,) application is made on behalf of the collector, under section 970 of the Revised Statutes, for a certificate of reasonable cause. By that section of the statutes it is made obligatory upon the court, in case it appears that there was reasonable cause of seizure, to cause a proper certificate thereof to be entered; and, in that case, neither the person who made the seizure nor the prosecutor will be liable to suit therefor. The "reasonable cause" referred to in this statute means the same as prob-

able cause. *Stacey* v. *Emery*, 97 U. S. 642, 646. In *Locke* y. *U. S.*, 7 Cranch, 339, MARSHALL, C. J., says:

"The term 'probable cause,' according to its general acceptance, means less than evidence which would justify condemnation, and in all cases of seizure has a fixed and well-known meaning. It imports a seizure made under circumstances which warrant suspicion."

In *Stacey* v. *Emery* the court say:

"If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient."

Upon a review of all the circumstances of this case, there appears to me to have existed such strong ground of reasonable suspicion as fully to justify the collector in making the seizure and putting the vessel on trial. It is true that nearly all the proofs that were afterwards produced in court, and upon which the court acquitted the vessel, were before the collector; but these facts and circumstances were such as might well give rise to diverse views; and though the court released the vessel, it was upon a favorable construction of numerous circumstances upon which it cannot be said that even cautious minds might not have drawn contrary inferences. The circumstances unfavorable to the steamer were mainly those arising from the acts and conduct of her own officers, and of her agents or representatives here. Had the court been satisfied that the Rio Hacha expedition was concerted before the vessel sailed from New York, her forfeiture would have been decreed. Whether that was so or not, depended upon inferences of fact to be drawn from all the circumstances. There were many unfavorable circumstances tending to create a strong suspicion that that enterprise was planned here. It was entered upon very shortly after the vessel arrived at Sabanilla. The violation by the vessel of the regulations upon clearing, her false destination, the false description of her cargo in the manifest filed before sailing, and the long delay in filing the supplementary manifest, in which the shipment of arms and military stores were stated under a false destination, coupled with the presence of a representative of the insurgents on board, and the departure from Sabanilla within a few days after arrival there upon the unlawful expedition to Rio Hacha, were all acts of the officers and agents of the vessel.

The affidavit of McCarthy, though untrustworthy alone, was corroborative of the natural inferences to be drawn from the above circumstances. The action of the collector in the case was conducted with deliberation and caution. He acted upon full consultation with the United States attorney, and under his advice. The circumstances, in my judgment, were such as to justify their decision that the vessel ought to be put upon trial for an apparent offense, and that could only be done through a seizure. The long custody of the vessel arose only through the claimant's failure to bond the vessel by the means provided by law. As it is not the province of the collector, or of

the United States attorney, his adviser, to pass final judgment in regard to the merits of cases in which there is suspicion of a violation of the law, so neither should they be required to take upon themselves the responsibility of forbearing prosecution where many circumstances concur in indicating that the law has been violated. The due administration of justice requires that such officers shall be vigilant and fearless in prosecuting all probable violations of law. On the other hand, it is but reasonable to hold that those who carry on trade along the very brink of illegality should avoid at their peril any additional circumstances of reasonable suspicion, and all false declarations, whether in the *suppressio veri* or *suggestio falsi*, that afford natural inferences of illegal pursuits.

Notwithstanding the learned and able argument in behalf of the vessel, I think a certificate of reasonable cause should be issued.