## UNITED STATES v. SCOTTI.

### Cr. No. 43215.

United States District Court
E. D. New York.

Nov. 30, 1953.

Henry G. Singer, Brooklyn, N. Y., for defendant.

Leonard P. Moore, U. S. Atty., New York City, by Edgar G. Brisach, Brooklyn, in opposition, for plaintiff.

RAYFIEL, District Judge.

The defendant moves for an order suppressing all evidence obtained through an alleged illegal seizure, and restraining the use thereof in any criminal prosecution.

The claim of the defendant, briefly stated, is as follows: at about 4 p.m. on March 5, 1953, he was standing at the corner of Pacific Street and Troy. Avenue, in Brooklyn, waiting for a friend whom he had an appointment to meet there. After waiting for some time he decided to leave and had proceeded along Pacific Street for about forty or fifty feet when a private car approached the curb and one of its two occupants called to him to come to the car. One of the men, showing him a badge, stated that he was a police officer, as was his companion, and asked him to enter the car. The men questioned him as to the reason for his presence on the corner, searched him, and took from him a wallet containing his chauffer's license and a registration certificate covering a 1939 Pontiac automobile. One of the New York City police officers asked his companion to

get "the other fellow outside" (referring to another person whose presence and movements had aroused their suspicion) and, when he was brought over, asked the defendant whether he knew him, which the defendant denied. One of the police officers searched and questioned the "other fellow" and learned that he was an agent attached to the Federal Alcohol Tax Unit, named Miller.

The officers then asked the defendant where the Pontiac was parked and when he refused to answer they proceeded along Pacific Street a short distance where Miller saw the Pontiac. The police officers again searched him, he states, took from his possession the keys to the Pontiac, opened the trunk, and removed therefrom five cans containing what they claimed was alcohol, all without a search warrant. He was booked at the 77th Police Precinct, in Brooklyn, and then taken to Federal Detention Headquarters.

The application herein appears to rest chiefly on the defendant's claim that the searching and questioning of Miller was a sham and a pretense; that actually the police officers were working in co-operation with him; and that hence the search and seizure were illegal.

The affidavits submitted in opposition state, in substance, that the police officers had the defendant under observation for upwards of one hour, during which period his conduct and movements aroused their suspicion. That shortly prior to the arrest they first observed Miller, whom they did not know, and believed him to be a confederate of the defendant. After Miller had been questioned and his identity established, he informed the officers that he had arrested the defendant on several occasions for offenses similar to that involved herein, and had had him under observation on the day in question. The officers state further that the defendant gave them the key to the Pontiac voluntarily.

■■ After reading the affidavits of both police officers and Miller I am satisfied that Miller's appearance on the scene was fortuitous, and entirely unrelated to the investigation being made by the police officers; that the latter, as they stated, would have made the arrest if Miller had not appeared; and that the defendant voluntarily surrendered his keys to the police officers. But even if I did not believe the surrender was voluntary I would be constrained to deny the defendant's motion because there was probable cause to believe that an offense had been committed, particularly so because of the defendant's previous arrests by Miller for similar offenses.

■ Since the search and seizure, as I believe, was accomplished by the New York City police officers entirely without the participation or co-operation of federal agent Miller, the government will have the right to use the evidence so obtained. See Byars v. U. S., 273 U.S. 28, at page 33, 47 S.Ct. 248, at page 250, 71 L.Ed. 520, wherein the Court said, "We do not question the right of the federal government to avail itself of evidence *improperly seized* by state officers operating entirely upon their own account." (Emphasis added.) To the same effect, see also Lotto v. U. S., 8 Cir., 157 F.2d 623; Weeks v. U. S., 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, and numerous other cases.

As to the matter of "probable cause" see Carroll v. U. S., 267 U.S. 132, 45 S. Ct. 280, 69 L.Ed. 543; Stacey v. Emery, 97 U.S. 642, 24 L.Ed. 1035; and Brinegar v. U. S., 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879.

Accordingly the motion is in all respects denied.

Submit order.